IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| THE ESTATE OF A.R., A MINOR CHILD, DECEASED, *et al.*, | § § § § | |
| Plaintiffs, | § § | |
| v. | § § | CIVIL ACTION NO. H-10-0533 |
| TERRY B. GRIER, SUPERINTENDENT OF THE HOUSTON INDEPENDENT SCHOOL DISTRICT, IN HIS OFFICIAL CAPACITY, *et al.*, | § § § § § | |
| Defendants. | § | |

**MEMORANDUM AND ORDER**

The mother and estate of A.R., a ten year-old who drowned in a public-school swimming pool during a summer enrichment program, have sued the Houston Independent School District (HISD) and several of its employees. The plaintiffs assert violations of A.R.'s constitutionally protected rights. Two of the defendants, Crystal Evans and Dave Muzyka, a teacher and the principal of the school where the drowning occurred, have moved for summary judgment. Evans and Muzyka ask this court to dismiss the claims against them in their individual capacities based on qualified immunity. (Docket Entry No. 45). The plaintiffs responded, (Docket Entry No. 59), and Evans and Muzyka replied, (Docket Entry No. 67).

Based on the record; the motion, response, and reply; and the relevant law, this court grants the defendants' motion for summary judgment based on qualified immunity. A status conference is set for **September 20, 2011, at 8:30 a.m.** in Courtroom 11-B.

The reasons for the ruling are explained in detail below.

**I.     Background** [1]

In the 2007-2008 academic year, A.R. was a student at T.H. Rogers Elementary School, which has programs both for students with impairments or disabilities and for students who are academically gifted and talented. A.R. had severe hearing loss and participated in the Regional Day School Program for the Deaf (RDSPD) at T.H. Rogers. A.R. also had seizures and took medication. Although she had seizures at school and the school nurse was aware of her epilepsy, whether her summer enrichment program teachers were aware of this fact is vigorously disputed.

A.R. completed third grade in spring of 2008. That summer, her mother enrolled her in the summer enrichment program conducted by the RDSPD at T.H. Rogers for hearing-impaired students that took place from early June to early July. A.R. had attended the summer enrichment program in previous years. The program included swimming in the pool at T.H. Rogers. A.R. knew how to swim and swam regularly during each of the summers she participated in the summer enrichment program. During those previous summers and in the summer of 2008, A.R.'s mother had provided written permission for her daughter to swim during the program. (Docket Entry No. 45, Ex. 4, 6-A).

---

[1] The summary judgment record includes : the affidavit of Crystal Evans and accompanying exhibits, (Docket Entry No. 45, Ex. 1); the affidavit of Myra Njoku and an accompanying exhibit, (*id.*, Ex. 2); the affidavit of Quiandine Jarrett, (*id.*, Ex. 3); the affidavit of Fred Waters, (*id.*, Ex. 4); the affidavit of David Muzyka, (*id.*, Ex. 5); the affidavit of Scott Hutchison and accompanying exhibits, (*id.*, Ex.6); the affidavit of Amy Rangel, (*id.*, Ex. 7); selected HISD records about A.R., (Docket Entry No. 59, Ex. A); the investigation report of HISD's Office of Inspector General, (*id.*, Ex. B); A.R.'s autopsy, (*id.*, Ex. C); the investigation report from the Texas Department of Family and Protective Services, (*id.*, Ex. D);the pool permit for T.H. Rogers and accompanying documents, (*id.*, Ex. E-1); information on the T.H. Rogers pool, (*id.*, Ex. E-2); HISD's swimming pool policy in effect in 2008, (*id.*, Ex. E-3);  HISD's swimming pool policy, effective February 19, 2009, (*id.*, Ex. E-4); Houston's swimming pool ordinance, (*id.*, Ex. F); the deposition of Crystal Evans, (*id.*, Ex. G); a KHOU news report about A.R.'s death, (*id.*, Ex. H); Houston Chronicle news report about A.R.'s death, (*id.*, Ex. I); a flyer for the summer enrichment program, (*id.*, Ex. J); a medical note, dated June 24, 2008, (*id.*, Ex. K); a Houston Chronicle article about the decedent in Civ. A. No. H-10-531, C.A., (*id.*, Ex. L-1); a medical history form for C.A., (*id.*, Ex. L-2); a video of C.A. drowning, (*id.*, Ex. L-3).

Evans and Muzyka filed numerous objections to the plaintiffs' evidence. (Docket Entry No. 67-1). Because this court determines that summary judgment is appropriate all of the plaintiffs' evidence into consideration, it is unnecessary to resolve Evans's and Muzyka's objections. Similarly, many of the facts in the summary judgment record are subject to dispute. Because these disputes do not affect the analysis or outcome of the legal issues, it is unnecessary to resolve them.

There is no record evidence of any prior issue or problem with A.R. swimming. There is no evidence that her parents or medical care providers limited her swimming. There is no evidence that the T.H. Rogers teachers and staff involved with A.R. during the academic year communicated to A.R.'s summer enrichment program teacher or other staff information about her epilepsy. There is no special service or restriction information for A.R. on the summer enrichment class roster in the space provided for that purpose.

On June 26, 2008, A.R. drowned in the T.H. Rogers pool. The investigation showed that she was sitting on the ledge of the pool, had a seizure, and fell in the pool. Two HISD employees, Evans and Waters, were supervising. Evans is a physical education teacher at T.H. Rogers and the swim coach for the middle school girls' swim team. Waters was the middle school boys' swim coach. Both were certified in water safety and in CPR and use of an AED.

The details of A.R.'s drowning are disputed. The investigation reports include varying numbers of adults and students present. There are also disagreements about the amount of time A.R. spent under water before Evans and others pulled her to the surface. (*See generally* Docket Entry No. 59, Exs. B and D). As noted, there are disputes as to whether Evans or other teachers involved with A.R. in the summer enrichment program knew of her seizures. There are disputes as to whether Evans failed to keep sufficiently close watch over A.R. to prevent her from falling into the pool and when she did, to pull her out promptly. But it is undisputed that there is no record evidence that any individual affirmatively harmed A.R., as opposed to failing to prevent her from falling into the pool or failing to rescue her fast enough to prevent her from drowning.

A.R.'s estate and mother, Tomasa Rodriquez sued, among others, Evans and Muzyka, who

is the principal at T.H. Rogers. (Docket Entry No. 28-2).[2] The complaint asserts a Fourteenth Amendment violation under 42 U.S.C. § 1983 and violations of § 504 of the Rehabilitation Act, 29 U.S.C. § 794, Title II of the Americans with Disabilities Act, 42 U.S.C. § 12131 *et seq.*, and Texas law. At the September 16, 2010 hearing, the plaintiffs withdrew their state-law claims. (Docket Entry No. 43). After discovery targeted to qualified immunity issues, Evans and Muzyka moved for summary judgment that they are not liable for damages in their individual capacities. The parties' arguments are addressed below.

## II. The Summary Judgment Standard

Summary judgment is appropriate if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). "The movant bears the burden of identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact." *Triple Tee Golf, Inc. v. Nike, Inc.*, 485 F.3d 253, 261 (5th Cir. 2007) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–25 (1986)).

If the burden of proof at trial lies with the nonmoving party, the movant may satisfy its initial burden by "'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *See Celotex*, 477 U.S. at 325. While the party moving for summary judgment must demonstrate the absence of a genuine issue of material fact, it does not need to negate the elements of the nonmovant's case. *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005) (citation omitted). "A fact is 'material' if its resolution in favor of one party might affect the outcome of the lawsuit under governing law." *Sossamon v. Lone Star State*

---

[2] The suit also lists HISD Superintendent Terry B. Grier and HISD Board of Trustees Chair Greg Myers as defendants. Those defendants did not join the motions considered in this memorandum and order.

*of Texas*, 560 F.3d 316, 326 (5th Cir. 2009) (quotation omitted). "If the moving party fails to meet [its] initial burden, the motion [for summary judgment] must be denied, regardless of the nonmovant's response." *United States v. $92,203.00 in U.S. Currency*, 537 F.3d 504, 507 (5th Cir. 2008) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc)).

When the moving party has met its Rule 56(a) burden, the nonmoving party cannot survive a summary judgment motion by resting on the mere allegations of its pleadings. The nonmovant must identify specific evidence in the record and articulate how that evidence supports that party's claim. *Baranowski v. Hart*, 486 F.3d 112, 119 (5th Cir. 2007). "This burden will not be satisfied by 'some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence.'" *Boudreaux*, 402 F.3d at 540 (quoting *Little*, 37 F.3d at 1075). In deciding a summary judgment motion, the court draws all reasonable inferences in the light most favorable to the nonmoving party. *Connors v. Graves*, 538 F.3d 373, 376 (5th Cir. 2008).

### III.    Analysis

#### A.    The Section 1983 Claims

##### 1.    Section 1983 and Qualified Immunity

"Section 1983 provides a cause of action when a person has been deprived of federal rights under color of state law." *D.A. ex rel. Latasha A. v. Houston Indep. Sch. Dist.*, 629 F.3d 450, 456 (5th Cir. 2010) (citing *Doe v. Dallas Indep. Sch. Dist.*, 153 F.3d 211, 215 (5th Cir. 1998)). Government officials are immune "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 129 S. Ct. 808, 815 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Qualified immunity shields federal and state officials from money damages unless

5

a plaintiff shows (1) that the official violated a statutory or constitutional right, and (2) that the right was "clearly established" at the time of the challenged conduct. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The Supreme Court recently clarified that lower courts have discretion to decide which of the two prongs of qualified-immunity analysis to tackle first. *See Pearson v. Callahan,* 555 U.S. 223, 236 (2009). Courts should think carefully before expending "scarce judicial resources" to resolve difficult and novel questions of constitutional or statutory interpretation that will "have no effect on the outcome of the case." *Ashcroft v. al-Kidd*, 131 S. Ct. 2074, 2080 (2011) (quoting *Pearson*, 129 S. Ct. at 818). It is most appropriate to decide whether a legal violation took place when evaluating the "clearly established" prong would not conserve judicial resources or when a case presents "questions that do not frequently arise in cases in which a qualified immunity defense is unavailable." *Pearson*, 555 U.S. at 236.

### 2.     Analysis

In this case, it is appropriate to consider first whether there was a rights violation. The plaintiffs argue that Evans and Muzyka violated A.R.'s "right to expect that school officials will follow city ordinances and standard internal policies directly applicable to the situation at hand when they are the officials charged under the laws, regulations and policies directly applicable to the situation at hand when they are the officials charged under the laws regulations and policies with the obligation to comply." (Docket Entry No. 59 at 26). The plaintiffs base their argument on a City of Houston ordinance and on the HISD written policies governing school swimming pools. Under Houston's Code of Ordinances, "[i]t shall be the duty of the owner of each public pool to ensure that at least one lifeguard is on duty and is stationed within 20 feet of the water's edge of the pool at any time that the pool is open for use." HOUSTON, TEX. CODE § 43.22(e). HISD has a Standard Practice

6

Manual that includes "Guidelines for the Operation and Care of Swimming Pools." According to the plaintiffs, the Guidelines required the HISD pools to confirm with the City of Houston ordinance for public pools, including having a lifeguard "present whenever an HISD swimming pool is in use." Any exceptions are to be "approved, in writing, by Athletics." The person acting as the lifeguard cannot perform "any additional duties that would distract his or her attention from proper observation of the pool area." (Docket Entry No. 59, Ex. E-4.).

The plaintiffs also contend that "federal law and regulations place affirmative duties on school official[s] who deal with impaired children" and contend that "[i]t would be ridiculous to argue that the school can comply with these laws in the technical sense (by having information about A.R.'s seizure disorder), but not transmit that information to people . . . who were to use that information in the summer program." (Docket Entry No. 59 at 28). Although the plaintiffs argue that federal law provides protections for impaired children such as A.R., they point to no specific federal law that the Evans and Muzyka violated.

The plaintiffs contend that the pleadings and summary judgment evidence preclude summary judgment on the qualified immunity defense based on a constitutional "right to expect that school officials will follow city ordinances and standard internal policies directly applicable to the situation at hand when they are the officials charged under the laws, regulations and policies with the obligation to comply." (Docket Entry No. 59, at 26). The plaintiffs contend that because Muzyka and Evans did not comply with the obligation to have a lifeguard present and near the pool, A.R. was deprived of her right to have these officials act in conformity with the ordinances and policies governing swimming pool use. The plaintiffs acknowledge that they cannot recover on a claim that the defendants had a constitutional duty to protect A.R. based on either a special-relationship or a

7

state-created danger theory. *See DeShaney v. Winnebago Cnty. Dep't of Social Servs.*, 489 U.S. 189, 203 (1989). The plaintiffs contend instead that the allegations that A.R. had a general right to be free from death at the hands of the government, combined with the more specific requirements under the ordinance and the swimming pool policy, make out a violation of a constitutional right that precludes summary judgment based on qualified immunity.

The plaintiffs' primary argument focuses on the Houston ordinance and the HISD policies on swimming pool use. To the extent that the plaintiffs contend that violations of state laws, without more, constitute § 1983 violations, they are incorrect. "It is well established that violations of state law are not actionable under § 1983." *Whitt v. Stephens Cnty.*, 236 F. App'x 900, 902 (5th Cir. 2007) (citing *San Jacinto Sav. & Loan v. Kacal*, 928 F.2d 697, 701 n.4 (5th Cir. 1991)); *Moore v. Willis Indep. Sch. Dist.*, 233 F.3d 871, 874 (5th Cir. 2000); *Williams v. Treen*, 671 F.2d 892, 900 (5th Cir. 1982); *Bush v. Viterna*, 795 F.2d 1203, 1208–09 (5th Cir. 1986) (citing *Stern v. Tarrant Cnty. Hosp. Dist.*, 778 F.2d 1052, 1056–60 (5th Cir. 1985) (en banc)).

To the extent that the plaintiffs contend that the ordinance and the HISD policies create interests protected by the Fourteenth Amendment, the argument fails as a matter of law. The plaintiffs have not provided a basis to conclude the ordinance or policy creates an individual entitlement. *See Town of Castle Rock, Colo. v. Gonzales*, 545 U.S. 748, 764–66 (2005). The plaintiffs do not recognize or attempt to make this showing. The Supreme Court has explained that "[m]aking the actions of government employees obligatory can serve various legitimate ends other than the conferral of a benefit on a specific class of people." *Id.* at 765 (citing *Sandin v. Conner*, 515 U.S. 472, 482 (1995)). Assuming, without deciding, that the ordinance and HISD policy required lifeguards and other safety features at the pools, they do not create a personal entitlement

enforceable under the Fourteenth Amendment. Nothing in their terms suggests that they create individually enforceable entitlements. *See id.* ("If she was given a statutory entitlement, we would expect to see some indication of that in the statute itself."). To the contrary, the Houston ordinance provides an administrative remedy of permit suspension or revocation for ordinance violations, not a private action. HOUSTON, TEX. CODE § 43–24; *see also Castle Rock*, 515 U.S. at 482 (reasoning that a statute did not create an enforceable benefit when it provided an administrative remedy but no private right of action).

A similar approach was attempted, and rejected, by the plaintiffs in *Langan v. Grand Rapids Public School System*, No. 94-CV-174, 1995 WL 17009502 (W.D. Mich. Feb. 28, 1995). In that case, a child suffered paralyzing injury when he dove from a starting block into a pool at the high school. He sued the school district under § 1983, alleging a constitutional violation. He specifically contended that the placement of the starting blocks in shallow water, the failure to remove the blocks while not in use, and the failure to have a lifeguard on duty violated policies and recommendations of the state's Public Health Department, the High School Athletic Association, and state law. *Id.* at *1. The court held that the failure to follow state law did not violate the due process clause. *Id.* at *5. The court held that the school system's failure to implement safety procedures in the school swimming pool, including procedures required by state law, was a nonintentional tort case under state law, not a substantive due process claim that required an intentional infliction of injury or some other governmental action that is "'arbitrary in the constitutional sense.'" *Id.* at *4, quoting *Lewellen v. Metropolitan Gov't*, 34 F.3d 345, 351 (6th Cir. 1994) (workman injured on school construction site sued the school district under § 1983 for building a new building so close to a power line that it violated safety and electrical codes; the court found no constitutional right violated

because although the defendants were negligent and perhaps grossly so, they did not engage in arbitrary conduct intentionally designed to punish).

The plaintiffs make clear in their response that they do not rely on other theories commonly used by individuals claiming that the government failed to protect them. The plaintiffs explicitly state that they do not assert a special relationship or state-created danger theory. (Docket Entry No. 45 at 34); *see also Kovacic v. Villarreal*, 628 F.3d 209, 213–14 (5th Cir. 2010) (noting that the Fifth Circuit recognizes the first theory but has not yet addressed the second); *accord Doe ex rel. Magee v. Covington Cnty. Sch. Dist. ex rel. Bd. of Educ.*, — F.3d —, 2011 WL 3375531, at *25 (5th Cir. Aug. 5, 2011) (King, J., dissenting) (noting that the Fifth Circuit has not adopted the state-created danger theory). The plaintiffs also disavow reliance on the "shock the conscience" theory. (Docket Entry No. 45, at 34–35); *see also Cnty. of Sacramento v. Lewis*, 846–50 (1998).[3]

The conclusion that as a matter of law, the plaintiffs have failed to make out a constitutional violation is consistent with other decisions declining to recognize a constitutional violation in cases involving drownings in public swimming pools or beaches. Most of the cases arise under a substantive due process theory. "There is a recognized substantive due process right for individuals to be free from bodily harm caused by the state, but as a general rule, there is no constitutional duty that requires state officials to protect persons from private harms." *Kovacic*, 623 F.3d at 213 (5th Cir. 2010); *Hamilton ex rel. Hamilton v. Cannon*, 80 F.3d 1525, 1529–32 (11th Cir. 1996) (affirming

---

[3] After briefing was complete, the Fifth Circuit held that "a very young child in the custody of a compulsory-attendance public elementary school is necessarily in a special relationship with that school when it places her in the absolute custody of an unauthorized private actor." *Doe*, 2011 WL 3375531, at *14. Unlike *Doe*, in which the school repeatedly placed the plaintiff in the custody of a stranger who raped her, the conduct at issue in this case is, at most, allowing a child enrolled in a public-school summer camp with a signed permission slip to swim in a pool without adequately monitoring her. Moreover, *Doe* was decided after A.R.'s death and cannot affect the qualified immunity analysis, which is concerned with the rights clearly established at the time of the complained-of violation. *Id*. *Doe* does not affect Evans and Muzyka's entitlement to qualified immunity.

10

summary judgment in a swimming pool drowning case). Courts have held that the Fourteenth Amendment does not require the government to rescue drowning victims, even when the drowning occurs in a public location where government employees are working as lifeguards. *Darwick v. Village of Penn Yan*, 972 F. Supp. 166, 169–70 (W.D. N.Y. 1997) (finding no right to rescue in a public beach drowning case). Nor is there a right to competent rescue once the government begins rescue efforts. *See Brown v. Pa. Dep't of Health and Emergency Med. Servs. Training Inst.*, 318 F.3d 473, 478 (3d Cir. 2003) ("[T]here is no federal constitutional right to rescue services, competent or otherwise . . . ."); *Salazar v. City of Chicago*, 940 F.2d 233, 237 (7th Cir. 1991) ("Government generally has no constitutional duty to provide rescue services to its citizens, and if it does provide such services, it has no constitutional duty to provide competent services to people not in its custody."); *Bradberry v. Pinellas Cnty.*, 789 F.2d 1513, 1517 (11th Cir. 1986) ("The Constitution, as opposed to local tort law, does not prohibit grossly negligent rescue attempts . . . .").

In *D'Anzona v. City and County of Denver*, 222 F.3d 1229 (10th Cir. 2000), the parents of a five year-old child who drowned while participating in a in summer program sponsored by the city. The drowning occurred when a counselor saw the child walking toward a group of children fishing with two other counselors, but turned her back before seeing him reach the group. The child's body was discovered the next day in the lake. The district court denied qualified immunity for the manager of the city parks and recreation department. In reversing, the court stated as follows: "Not paying enough attention to a child and thus allowing the child to wander away and drown is terribly tragic, and possibly even negligent. However, mere negligence does not shock the conscience." 222 F.3d at 1236; *see also Rankin v. City of Wichita Falls, Texas*, 762 F.2d 444, 447–48 (5th Cir. 1985)

11

(suit by parents of man killed when he drowned in a water tank, alleging that the City's water plant contained numerous safety deficiencies that proximately caused the death; the court held that it could not equate tort law violations by state actors with constitutional deprivations and dismissed the complaint). Similarly, in *Bradberry v. Pinellas County*, 789 F.2d 1513 (11th Cir. 1986), the mother of a swimmer who drowned on a beach owned by the county sued under § 1983. The court held that the county's failure to provide adequately trained lifeguards did not violate the deceased's constitutional rights. The court emphasized that the allegations involved a failure to assist effectively or competently, despite efforts to do so, noting that allegations of "essentially inaction" are "remote from the concerns of the framers of the Fourteenth Amendment." *Id.* at 1517. The court emphasized that this distinguished the case from those involving a government entity that is alleged to have grossly negligently trained an agent who then takes "affirmative action" causing harm. Id. at 1518; *cf., e.g.*, *Ross v. United States*, 910 F.2d 1422, 1433 (7th Cir. 1990) (mother of child who slipped on a crack in the breakwater, fell into lake, and drowned sued government entities based on an alleged policy directing the sheriff's department to prevent any civilian from attempting to rescue someone in danger of drowning in the lake; the court held that this stated a constitutional claim because this was not merely a failure to provide services or a failure to rescue, but rather an affirmative act of cutting off private sources of rescue without providing a meaningful alternative).

In *Leo v. Trevino*, 285 S.W.3d 470 (Tex. App.—Corpus Christi 2006 no pet.), parents of a child who drowned on a school field trip sued the school district and individual defendants for failing properly to supervise the students and not hiring lifeguards. Applying Fifth Circuit precedent and relying on the Tenth Circuit's analysis in *D'Anzona*, the court held that neither the special relationship doctrine nor the state-created danger doctrine applied. The student's school attendance

12

was insufficient to show a special relationship, and the alleged misconduct of failing adequately to supervise did not demonstrate deliberate indifference. *Id.* at 485–90.

In this case, Evans and Muzyka are entitled to summary judgment on the § 1983 claims because the plaintiffs have not shown a violation of a constitutional right under current law or a under the clearly established law at the time the drowning occurred.

### B. The ADA and Rehabilitation Act Claims

The plaintiffs also assert claims under the ADA and Rehabilitation Act. The ADA and Rehabilitation Act do not provide for damages against individuals. Nor does § 1983 provide a vehicle for individual damages for violations of the Acts. *D.A.*, 629 F.3d at 456; *Garcia v. State Univ. of N.Y. Health Scis. Ctr.*, 280 F.3d 98, 107 (2d Cir. 2001); *Lollar v. Baker*, 196 F.3d 603, 608–10 (5th Cir. 1999); *Alsbrook v. City of Maumelle*, 184 F.3d 999, 1010–11 (8th Cir. 1999); *Holbrook v. City of Alpharetta*, 112 F.3d 1522, 1531 (11th Cir. 1997); *Comeaux v. Thaler*, Civ. A. No. H-01-1411, 2008 WL 818341, at *18 (S.D. Tex. Mar. 24, 2008); *Gonzales v. City of Corpus Christi*, No. C.A. C-05-280, 2006 WL 1517507, at *5 (S.D. Tex. May 31, 2006). The motion for summary judgment on the ADA and Rehabilitation Act claims is granted.

### IV. Conclusion

The motion for summary judgment is granted. A status conference is set for **September 20, 2011, at 8:30 a.m.** in Courtroom 11-B.

SIGNED on August 26, 2011, at Houston, Texas.

_____
Lee H. Rosenthal
United States District Judge